UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GEORGE WILLIAM CANALE,**

    **Plaintiff,**

    v.                                                       **Civil Action 2:21-cv-162**
                                                                     **Judge Sarah D. Morrison**

**COMMISSIONER OF SOCIAL**                 **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

    **Defendant.**

**REPORT and RECOMMENDATION**

    Plaintiff, George William Canale, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

                               **I.**       **BACKGROUND**

    Plaintiff filed an application for Title II Disability Income Benefits on March 6, 2018, alleging that he had been disabled since June 20, 2016. (R. 203–09.) On February 13, 2020, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Deborah F. Sanders (the "ALJ") held a hearing, at which Plaintiff,

represented by counsel, appeared and testified. (R. 53–95.) A vocational expert ("VE") also appeared and testified at the hearing. (*Id.*) On April 28, 2020, the ALJ issued a decision denying benefits. (R. 12–46.) On November 17, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff sets forth a single contention of error: that the ALJ's residual functional capacity is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ improperly relied upon the opinion of State agency medical consultant, Anton Freihofner, M.D., when crafting Plaintiff's residual functional capacity. (Pl.'s Statement of Errors 6–10, ECF No. 14.)

## II. THE ALJ'S DECISION

The ALJ issued her decision on April 28, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 9–51.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (R. 14.)

At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 20, 2016, the alleged onset date of disability. (*Id.*)  At step two, the ALJ found that Plaintiff has the following severe combination of impairments: degenerative changes of the cervical and thoracic spine, tension headaches, visual disturbance, peripheral vertigo, and depressive, anxiety, and trauma- and stressor-related disorders. (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (R. 17.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

> After careful consideration of the entire record, it is determined that the [Plaintiff] has the residual functional capacity to perform medium [citation to footnote omitted] work as defined in 20 CFR 404.1567(c). Balancing, climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than frequently. He must avoid concentrated exposure to humidity, noise, vibrations, fumes, odors, dusts, gasses, poorly ventilated areas, and extreme heat. He cannot climb ladders, ropes, and scaffolds, engage in commercial driving, perform jobs requiring work performed lying down, and work around dangerous machinery or at unprotected heights. He cannot work in environments rated as greater than Level-3 for noise as defined in the Selected Characteristics of Occupations ("SCO"). Mentally, the [Plaintiff] retains the capacity to interact occasionally with co-workers, but he cannot perform shared or tandem tasks. He can interact occasionally with supervisors, but is precluded from over the shoulder supervision. He can interact occasionally with members of the general public, but not in a customer service capacity. He cannot perform tasks where he directs the work of others.

(R. 26.) When assessing Plaintiff's RFC, the ALJ found that although his medically determinable impairments could be expected to cause at least some of his alleged symptoms, his statements regarding the intensity, persistence, and limiting effects of his symptoms are not sufficiently supported by the medical evidence and other evidence in the record. (R. 27.)

At step four, relying on testimony from the VE, the ALJ found that Plaintiff was unable to perform his past relevant work as a pipefitter, carpenter or mower. (R. 44.) At step five, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that he can perform such as stubber, receiving checker, and flummer. (R. 45.) The ALJ therefore concluded that Plaintiff has not been under a disability since June 20, 2016. (R. 46.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff asserts a single contention of error: that the ALJ's residual functional capacity is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ improperly relied on the opinion of state agency medical consultant Anton Freihofner, M.D., in crafting Plaintiff's RFC. Plaintiff's argument lacks merit.

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the

5

Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, the ALJ relied on the opinion of state agency reviewer Anton Freihofner, M.D., who evaluated Plaintiff's application at the reconsideration level. (*See* R. 118–30.) Dr. Freihofner first opined that Plaintiff had the severe impairments of Vestibular System Disorders, Spine Disorders, and Depressive, Bipolar, and Related Disorders, but that Plaintiff's impairment of "Visual Disturbances" was non-severe. (R. 125.) Dr. Freihofner further opined that Plaintiff is limited to occasionally lifting or carrying 50 pounds, frequently lifting or carrying 25 pounds, standing about 6 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, and

that Plaintiff is unlimited in his ability to push or pull.  (*Id*. at 128.)  In response to a prompt to "[e]xplain exertional limitations and how and why the evidence supports your conclusions.  Cite specific facts upon which your conclusions are based," Dr. Freihofner responded, "vertigo, headaches, diplopia," and also cited two 2017 brain imaging results that revealed no acute abnormality.  (*Id.* at 128–29.)  Dr. Freihofner also opined that Plaintiff could frequently climb ramps or stairs, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds, explaining, "[c]annot climb ladders/ropes/scaffolds due to vertigo and HA's [headaches]."  (*Id.* at 129.)  Finally, Dr. Freihofner opined that Plaintiff must avoid concentrated exposure to heat, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, etc., and that Plaintiff must avoid all exposure to hazards such as machinery and heights.  (*Id.* at 129–30.)  Under "RFC — Additional Explanation," Dr. Freihofner noted Plaintiff's diagnosis of diplopia at an April 23, 2018 Otoneurology Consult (*id.* at 130, citing R. 625), as well as a chief complaint of diplopia at a May 9, 2018 office visit, but also noted that corneal topography on May 9, 2018, revealed only astigmatism that was determined to not be the cause of his diplopia.  (*Id.* at 130, citing R. 621–22.)

      The ALJ found Dr. Freihofner's opinions persuasive because they were consistent with and supported by the totality of the evidence.  (R. 29.)  Regarding Plaintiff's diplopia, the ALJ noted that Dr. Freihofner's opinions were consistent with other record evidence documenting that "the claimant has full visual fields with no deficit, and did not demonstrate diplopia, at times."  (R. 30, citing R. 606, 614, 626, in which Plaintiff reported no diplopia during office visits on January 5, March 3, and April 23, 2018).  The ALJ's RFC adopted all of Dr. Freihofner's exertional limitations, which Dr. Freihofner noted were based in part on Plaintiff's diplopia.  (R. 26, 128.)  A state agency reviewer's opinion, like that of Dr. Freihofner, constitutes

7

substantial evidence on which an ALJ may rely in crafting a claimant's RFC. *See* 20 C.F.R. § 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants). Therefore, the undersigned finds that the ALJ's RFC is supported by substantial evidence.

Although Plaintiff points to evidence that he asserts warrants greater limitations arising out of his diplopia, the undersigned is not persuaded that remand is necessary in view of the countervailing record evidence upon which the ALJ relied. Rather, "there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Plaintiff further contends that the ALJ could not have properly relied on Dr. Freihofner's opinions because the ALJ determined that Plaintiff's "visual disturbance" was a severe impairment, whereas Dr. Freihofner determined Plaintiff's "visual disturbance" was a non-severe impairment. (*See* R. 14, 125.) According to Plaintiff, "[b]y finding that Plaintiff has a severe visual disturbance and acknowledging that at times Plaintiff suffers from diplopia, but failing to assess visual limitations in assessing Plaintiff's residual functional capacity as a result of the improper reliance upon the opinion of Dr. Freihofner, who failed to find a severe visual disturbance, the ALJ's residual functional capacity assessment fails to be supported by substantial evidence." (Pl.'s Statement of Errors 8, ECF No. 14.) This argument lacks merit.

First, Dr. Freihofner, and by extension, the ALJ, *did* assess exertional limitations based in part on Plaintiff's diplopia. (*See* R. 128, noting "diplopia" as one of the underlying bases for assessment of exertional limitations.) Accordingly, Plaintiff is simply incorrect that the ALJ

8

failed to assess limitations based on his diplopia. Second, even if the ALJ had not assessed limitations based on Plaintiff's diplopia, there is no requirement that an ALJ assess limitations corresponding to every "severe" impairment. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting *Yang v. Comm'r of Soc. Sec.,* No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Thus, the ALJ's characterization of Plaintiff's diplopia as a "severe" impairment did not by itself require the ALJ to assess any limitations arising out of Plaintiff's diplopia. The ALJ therefore could not have erred by relying on an opinion that characterized Plaintiff's diplopia as non-severe, so long as the ALJ considered the limiting effects of Plaintiff's diplopia. And the ALJ's opinion makes clear that she did consider the limiting effects of Plaintiff's diplopia, although she determined that they were minimal. (*See* R. 30, noting that Plaintiff had full visual fields without deficits and noting several office visits in which Plaintiff did not report diplopia.)

Further, Plaintiff states in Reply that "Plaintiff has not argued that the limitations from his diplopia make him disabled." (Pl.'s Reply 4–5, ECF No. 16.) By acknowledging that any limitations arising from his diplopia would not render him disabled, Plaintiff has conceded that even if the ALJ had erred in relying on Dr. Freihofner's opinion, any such error would be harmless. Remand is therefore unnecessary. *Rabbers*, 582 F.3d at 654 (noting that "courts are not required to 'convert judicial review of agency action into a ping-pong game' where 'remand

9

would be an idle and useless formality'") (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)).

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE